UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *UNITED STATES OF AMERICA,* | ) | |
| | ) | |
| *v.* | ) | *Criminal No. 05-98-P-S* |
| | ) | |
| *ROGER T. NELSEN,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON MOTION TO SUPPRESS*

Roger T. Nelsen, charged with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), *see* Information (Docket No. 14), seeks to suppress evidence seized and statements he made on January 14, 2004, following a warrantless entry of his home in Scarborough, Maine, Motion to Suppress ("Motion") (Docket No. 23) & Defendant's Memorandum of Law in Support of Defendant's Motion to Suppress, etc. ("Memorandum") (Docket No. 32) at 1. An evidentiary hearing was held before me on March 20, 2006, at which the defendant appeared with counsel. Immediately following the close of evidence, counsel were afforded the opportunity to argue orally. Counsel for the government chose to argue briefly. I now recommend that the following findings of fact be adopted and that the motion to suppress be denied.

**I. Proposed Findings of Fact**

On January 14, 2004 Kenneth Cogan, then a special agent with the Bureau of Immigration and Customs Enforcement ("ICE") in Bangor, Maine who, among other things, investigated the importation of contraband, including child pornography, went to the police department in Scarborough, Maine to meet with Chief Robert Moulton and Deputy Chief David Grover. Cogan was accompanied by Glenn Lang, a sergeant with the Maine State Police who supervised the Maine Computer Crime Task Force,

1

a position that he still holds. Cogan has training in the area of child pornography and child exploitation and has viewed numerous examples of child pornography. He had received information that a credit card owned by the defendant and another person had been used to purchase membership to a website containing images of child pornography. He and Lang went to the police department as a professional courtesy before a planned "knock and talk" at the defendant's residence because the defendant was employed by the Scarborough Police Department as a reserve officer. The defendant was also employed by the town as a school bus driver.

As a reserve officer, a position which he had held for approximately 20 years, the defendant was assigned to patrol in the Prouts Neck area. He also had experience in traffic and crowd control. He never sought nor served search warrants. Mandatory annual training for Scarborough reserve police officers sometimes included the subject of search warrant procedures. The defendant admitted attending such training sessions but denied learning anything or reading the written materials handed out during the courses. He testified that he was not aware that police officers executing a search warrant must leave a copy of the warrant at the premises searched.

After speaking with Moulton and Grover, at approximately 2:40 p.m., Cogan and Lang went to the defendant's residence at 18 Green Needle Drive in Scarborough.[1] The defendant's daughter answered the door, and Cogan and Lang waited outside on the step until she brought the defendant to the door, at which point they identified themselves and displayed their credentials to the defendant.[2] Cogan explained that they were there to investigate the use of the defendant's credit card on a website that contained child pornography. The defendant responded, "That was me." He also said that this use

---

[1] The defendant testified that he got home from driving his school bus that day between 3:30 and 3:45 p.m., having transported his daughter, a school bus aide who did not have a driver's license, home with him. The difference in times is not important for purposes of the decision on the motion to dismiss, but I note that where the testimony of the defendant differs from that of any other witness, I find the other witness's testimony to be more credible, unless otherwise noted in the body of this recommended decision.

[2] The defendant testified that he assumed that the agents were salesmen, so he opened the door and let them in before they identified
(*continued on next page*)

2

of the credit card had occurred two years ago. Cogan and Lang then asked whether they could look at the defendant's computer. The defendant appeared nervous and said, "Let's go into the bedroom." His daughter was near the front door at the time and Cogan and Lang both had the impression that the defendant did not want his daughter to hear any more of their conversation. The agents did separate briefly when Lang went out to their vehicle to retrieve the hardware he would use to search the defendant's computer.

Cogan asked the defendant if he would be willing to sign a form giving the agents permission to search his computer and handed the defendant the form, which the defendant read. This form is Government Exhibit 1.[3] The three men went into a bedroom and the defendant closed the door after them.[4] He signed the permission form in the bedroom, after Cogan had told him that he was not under arrest and did not have to allow a search of his computer. Cogan filled in the serial number of the hard drive from the defendant's computer after the hard drive had been removed from the computer, and after the defendant had signed the form. Lang searched the computer while Cogan asked the defendant questions about the history of the computer which the defendant agreed to answer. The defendant said that he used the screen names RogerTee, lagunalionheart and PD55 and that any pornography would be found under the name RogerTee. Lang said that he had found videos of child pornography on the computer; Cogan looked at the videos and agreed that the images violated federal law. Lang then removed the hard drive and connected it to his laptop computer through a device that allowed him to look at images on the hard drive without changing anything that was on the hard drive.

---

themselves.

[3] The defendant testified that this form was only presented to him after the computer had been searched and that he was told that it was a receipt for the computer's hard drive, which Cogan and Lang took with them when they left. He testified that he did not read the form, but that the first page on Government Exhibit 1 had not been on the form that he signed. I do not find this testimony to be credible.

[4] The defendant testified that Cogan "disappeared" while he was talking with Lang just inside the door to his house and that he later found Cogan in his bedroom, without the defendant's permission, where he had already removed the hard drive from the defendant's computer. He testified that Cogan had asked his daughter where the computer was and she had directed him to the defendant's (*continued on next page*)

Cogan filled out the Form 6051 that is Government Exhibit 7 as a receipt for seized property, specifically the hard drive, a copy of which form was left with the defendant.

Cogan asked the defendant whether he had any other images or files like those that had been found on this computer. The defendant said yes and retrieved two CD-RWs from the bedroom closet, which he gave to Cogan. Cogan added these CDs to the Form 6051. The defendant later found another CD with similar files and called the Scarborough Police Department to report this, as Cogan and Lang had asked him to do. The defendant gave this CD to Captain Grover, who turned it over to the Computer Crimes Task Force. Cogan and Lang were at the defendant's residence for a period from one-half hour to an hour. The defendant was cooperative at all times. He responded appropriately to all of the agents' questions. Neither agent ever said that he had a search warrant, drew a weapon or made threats designed to induce the defendant's consent. Cogan does not recall telling the defendant that he should turn in anything he later found with computer files of a similar nature to the seized material or Cogan would find out about it and be back, but he often told defendants in similar circumstances that they should turn over any additional materials that they might find later.

Government Exhibit 3 is a spread sheet created by Cogan showing the six video files included in the charging information indicating where each was discovered. All six were found on the hard drive of the defendant's computer; five were found on the CDs that the defendant gave to Cogan; and three were found on the CD that the defendant gave to Grover. The defendant knew that these videos or files contained child pornography. Information on which the charge against the defendant is based was not obtained from the website "All X Boys," which was the site with which Cogan had been informed the defendant's credit card was associated.

---

bedroom. I do not find this testimony to be credible.

4

After Cogan and Lang left, the defendant went to the Scarborough police station to speak with Moulton. Moulton brought the town's human resources director into the meeting with him. He also called William Michaud, the superintendent of schools for Scarborough, who arrived after the meeting had started. The defendant talked at length about his personal concerns about sexuality and said that he had some pictures on his computer that he was not aware might have been of children. He was quite emotional and knew that he needed to resign from the police department and as a bus driver. He did not say that Cogan and Lang had treated him unfairly.[5] He decided to resign both positions.[6]

## II. Discussion

The motion to suppress giving rise to this recommended decision was filed on January 6, 2006. Docket No. 23. It states, in its entirety:

> Now comes Roget T. Nelsen, Defendant in the above-captioned case, by and through his attorney, and moves this Honorable Court pursuant to Rule 41(h), Federal Rules of Criminal Procedure, t[o] suppress all items seized from the residence of the Defendant by agents of the Government and any information obtained therefrom on the grounds that said items were obtained in violation of his Fourth Amendment rights as guaranteed by the Constitution of the United States to be free from unreasonable searches and seizures, the said search and seizure and entry into his residence having been without a warrant, without his consent and without exigent circumstances.
>
> Defendant seeks a testimonial hearing on the grounds that the evidence is in conflict on these issues. The hearing should last no more than three hours.

Motion. No supporting materials were filed with this motion. This motion is wholly inadequate under this court's Local Rule 147(a). Alerted by the government's argument in its opposition to the motion to suppress that the defendant was not entitled to an evidentiary hearing because he had failed to

---

[5] The defendant testified that at this time he was "still assuming" that Cogan and Lang had had a search warrant for his residence, because they were police officers and the defendant believed that a police officer could not search a residence under any conditions without a search warrant. I find such a belief by a 20-year veteran of a police department, even if only as a reserve officer, to be unreasonable if it in fact was held by the defendant.

[6] The defendant testified that he resigned both positions only because Cogan and Lang told him to do so, and because Michaud asked him to. I do not credit this testimony.

5

submit an affidavit or to allege any facts specific to this charge that might be in dispute, Government's Memorandum of Law in Opposition to Defendant's Pretrial Motion ("Opposition") (Docket No. 31) at 4-6, counsel for the defendant filed, on February 7, 2006 — 32 days after the filing of the initial motion and 11 days after the filing of the opposition — a document entitled "Defendant's Memorandum of Law in Support of Defendant's Motion to Suppress and Supporting Affidavit" ("Defendant's Memorandum"). Docket No. 32. Local Rule 147(a) requires that the memorandum of law supporting a motion in a criminal case in this court be filed with the motion. The same is true of supporting affidavits. Because counsel for the government subsequently took the position, during a telephone conference with counsel that I scheduled to address the defendant's lack of compliance with this court's local rules, that the defendant's memorandum properly put in dispute factual issues relevant to the motion to suppress, I will treat the memorandum as the memorandum contemplated by Local Rule 147(a). Counsel for the defendant is now on notice, however, that similar lapses in the future will not be treated so indulgently.

The defendant's memorandum asserts that "he never affirmatively consented to the entry into his residence nor his bedroom nor the seizure of his computer or the view of movies on it." Defendant's Memorandum at [3].[7] In support of his argument that this lack of affirmative consent makes the seizure of the computer hard drive and all of his statements to Cogan and Lang inadmissible, the defendant relies on his status as a reserve police officer and his belief "that the officers had a search warrant and that he could not object to the search given his position and with whom he was dealing." *Id*.

"It is settled that an individual may waive the warrant requirement of the Fourth Amendment by consenting to a search of her person, property, or effects, as long as the individual's consent is freely

---

[7] The defendant's counsel is also reminded of Local Rule 147(e)'s requirement that all pages shall be numbered, at the bottom.

6

and voluntarily given." *United States v. Schaefer*, 87 F.3d 562, 569 (1st Cir. 1996). It is also settled that such consent need not be knowing and intelligent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 235-48 (1973). The government need not establish "an intentional relinquishment or abandonment of a known right or privilege" in order for a defendant's consent to search to be valid. *Id*. at 235. Thus, the defendant's testimony that he did not read the written consent-to-search form before signing it does not render his consent invalid. Nor does his mistaken belief — a highly unlikely belief for a man with his background, experience and training — that Cogan and Lang had a search warrant, which they did not mention or show to him, vitiate his written consent. According to Cogan's testimony and affidavit (Government Exh. 2), which I find credible, the defendant had been told that he was not under arrest and that he need not give permission to search his computer before he signed the consent form. According to the defendant himself, he let Cogan and Lang into his house; whether they identified themselves before or after stepping inside the door therefore makes no difference. The defendant testified that he made several unreasonable assumptions that turned out to be erroneous but he did not testify to any conduct or speech by either Cogan or Lang that could possibly be construed as threatening or coercive.

Factors bearing on the voluntariness of a consent to search include age, education, experience, intelligence, and knowledge of the right to withhold consent, whether the consenting party was advised of his or her constitutional rights, and whether permission was obtained by coercive means or under inherently coercive circumstances. *United States v. Barnett*, 989 F.2d 546, 555 (1st Cir. 1993). Here, the defendant was not elderly or very young; he had a high school education and training as a reserve police officer; he was considered by Moulton and Grover, both of whom have known him for more than 20 years, to be of average intelligence, as he appeared to be at the hearing; he had been informed that he need not consent; and permission was not obtained by coercive means or under

7

inherently coercive circumstances. *See id.* (consent given by defendant met at door of home by seven or eight law enforcement officers with guns drawn not coerced under all of the circumstances). The only thing missing from this list was a formal statement of the defendant's constitutional rights, which he may be deemed to have known as a result of his experience as a reserve police officer, where he was charged not only with knowing those rights but also with protecting others' exercise of them. *See generally United States v. Lee*, 317 F.3d 26, 34 (1st Cir. 2003) (direct, first-hand experience with law enforcement militates against finding that defendant lacked full comprehension of a request to search).

The defendant argues in the alternative that the entry into his bedroom and search of his computer "exceeded the scope" of any consent he might have given to enter his residence. Defendant's Memorandum at [3]. However, I credit the agents' testimony that the defendant voluntarily led them to his bedroom and signed the consent-to-search form before the computer was searched. The scope of any consent implied when the defendant invited the agents into his residence is irrelevant given the existence of the written consent to search. Nor does the evidence support the defendant's claim that he only turned over the first two CDs to the agents because he "believed he was required to do so." *Id*. The only reason for this belief given by the defendant in his testimony was his professed lack of knowledge and misinformation about search warrants, claims that I have already discounted for the reasons discussed above.

These conclusions make it unnecessary to reach the government's alternative argument that the CDs and the videos on the defendant's computer were subject to the inevitable discovery doctrine.

### III. Conclusion

For the foregoing reasons, I recommend that the foregoing proposed findings of fact be **ADOPTED** and the defendant's motion to suppress be **DENIED**.

8

Case 2:05-cr-00098-GZS   Document 42   Filed 03/22/06   Page 9 of 9   PageID #: 82

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of March, 2006.

    /s/ David M. Cohen
David M. Cohen
United States Magistrate Judge